UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN DAVIS,

       Plaintiff,                           Case No.  1:14-CV-0413

v.                                          HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY

       Defendant,
_____/

**OPINION**

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of an unfavorable decision by the Commissioner of Social Security (Commissioner). Plaintiff Dawn Davis filed her application for disability benefits on April 14, 2011. (A.R. 193). Plaintiff now seeks review of the Commissioner's decision denying her claim for disability benefits (DIB) under Title II of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that plaintiff is not disabled within the meaning of the Act during the time period within which plaintiff would be eligible to receive benefits. The Court has thoroughly reviewed the record and the filings by plaintiff and the Commissioner and, for the reasons stated below, concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by

substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff Dawn Davis was 48 at the time of the Administrative Law Judge's (ALJ) decision. (*See* A.R. 24-25, 6). She graduated high school and attended one year of college (A.R. 28). Ms. Davis previously worked as an order picker, unskilled home health attendant and production line welder (A.R 15).

Plaintiff applied for benefits on April 14, 2011, alleging that she had been disabled since July 9, 2010, due to: "manic depression, anxiety, major mood swings, diabetes, [a] nervous breakdown, lack of sleep due to stress, possible bipolar type II brought on by stress" (A.R. 85). In addition, plaintiff stated she had poor short term memory, and an inability to focus. (A.R. 85). Ms. Davis' application was denied by the Commissioner during its initial review on August 12, 2011. (A.R. 96-99). Thereafter plaintiff requested a hearing before an ALJ.

On June 14, 2012, plaintiff received a hearing before ALJ Paul Jones. At this hearing, plaintiff was informed of her right to retain counsel, and she asked to postpone the hearing so that she could obtain counsel. Accordingly, the hearing was postponed. (A.R. 75-83). Several months later, on October 3, 2012, plaintiff received a second hearing before ALJ Jones with her retained counsel (A.R. 21-74). Both plaintiff and a vocational expert, Carrie Anderson, testified. After hearing testimony on the matter and reviewing the record, the ALJ issued an unfavorable decision on November 20, 2012. The ALJ found that plaintiff was not disabled because she was capable of performing past relevant work. (A.R. 6-15). On February 27, 2014 the Appeals Council denied

review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.  Plaintiff now brings this action.

Plaintiff's insured status expires on December 31, 2015 (ECF #7-2, Page ID 30). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, plaintiff must establish that she became disabled prior to the expiration of her insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ's DECISION

A claimant must prove that she suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). To aid ALJs in applying the above standard, the Commissioner of Social Security has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five step sequential process" for claims of disability.  First [a] plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, [a] plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if [a] plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [a] plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, [a] plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that [the] plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(a-f).

The plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

The ALJ determined plaintiff's claim failed at the fourth step of the above mentioned evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since July 9, 2010 (A.R. 11).  Second, the ALJ determined plaintiff had the severe impairments of affective disorder, anxiety disorder, and substance abuse (A.R. 11).  The ALJ also determined that plaintiff experienced symptoms due to obesity, diabetes, hyperlipidemia and hypertension, but found them to be non-severe impairments to the plaintiff. (A.R. 12).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Specifically, the ALJ determined that plaintiff did not meet the criteria in listings 12.04, 12.06, and 12.09 of the appendix because the requirements of the "paragraph B" criteria were not met.  The ALJ found that plaintiff had only mild difficulties in her daily living activities, moderate difficulties in her social functioning, and in maintaining her concentration, persistence or pace, and had no episodes of decompensation which lasted for an extended duration.

At the fourth step, the ALJ determined plaintiff's residual functional capacity (RFC). The ALJ found that plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant can only perform 1 or 2 step tasks.[1] She can have occasional interaction with public and can have occasional supervision." (A.R. 13). At the fourth step, the ALJ ruled that based on his RFC determination, the plaintiff was able to perform her past relevant work as an order picker, unskilled home health attendant, and production line worker. (A.R. 15). Because that finding was dispositive, the ALJ's examination ended there and did not proceed to the fifth step. After the Appeals Council denied review of the ALJ's decision, plaintiff filed a civil suit.

## ANALYSIS

Plaintiff brings the following questions in arguing the ALJ erred in rendering his decision and answers each one saying "yes:"

1. Did the ALJ violate SSR 96-8p in not considering the effect of Ms. Davis's obesity, diabetes, hyperlipidemia, and hypertension on her ability to work?

2. Did the ALJ err in failing to find that the plaintiff's severe depression meets and/or equals the criteria of listing 12.04?

3. Did the ALJ fail to comply with 20 C.F.R. § 404.1527 in not according adequate weight to the opinion of Ms. Davis's treating psychiatrist and to consider the various factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating psychiatrist?

(Plaintiff's Brief, pp. 8). The Court will consider each issue in turn.

---

[1] 1 or 2 step tasks "'deals with the level of sophistication or intensity of the work that can be done with the concentration limitation'—on par with 'simple, unskilled routine' work." *Brown v. Comm'r of Soc. Sec.*, 672 F. Supp. 2d 794, 797 (E.D. Mich. 2009) (quoting *Benton v. Comm'r of Soc. Sec*, 511 F. Supp. 2d 842, 846 (E.D. Mich. 2007)).

> **1. Substantial Evidence Demonstrates the ALJ Considered Plaintiff's Severe and Non-Severe Impairments.**

Plaintiff first argues that the ALJ's decision did not consider her non-severe impairments of obesity, diabetes, hyperlipidemia, and hypertension in assessing her RFC after step three, and that had the ALJ properly considered those ailments, her RFC would have been more restrictive.[2] Plaintiff depends on Social Security Ruling 96-8p[3] in support of her position. SSR 96-8p states, in relevant part,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim.

*Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96–8p, 1996 WL 374184, at *5 (1996). Plaintiff thereafter cites to case law requiring the Commissioner to take into account the impact of both a claimant's severe and non-severe impairments.

Contrary to plaintiff's assertion, substantial evidence demonstrates the Commissioner understood his responsibility to consider all of the plaintiff's impairments. In the ALJ's decision, the ALJ wrote that "Before considering step four of the sequential evaluation process, I must first

---

[2] Plaintiff asserts that these impairments contribute to fatigue and shortness of breath, but does not state what the RFC should have been.

[3] Social Security Rulings (SSR's) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 F. App'x. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

determine claimant's residual functional capacity (20 CFR 404.1520(e)) . . . . In making this finding, I must consider all of claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p)" (Tr. 10). Later the ALJ stated "I have considered *all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 13) (emphasis added). As other courts have held, language such as this may be sufficient to meet the requirements of the Social Security Administration. *See Dennis v. Comm'r of Soc. Sec.*, No. 13-12754, 2014 WL 4639511, at *23 (E.D. Mich. Sept. 16, 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009), for a similar proposition regarding assessing a claimant's credibility) ("[T]he ALJ expressly stated that she had considered S.S.R. 97–7p, which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so.").

In this case, as plaintiff's brief itself points out, the ALJ supplemented the above language by expressly discussing plaintiff's non-severe impairments and examining the medical record: "Claimant has no end organ damage and has no edema. Her treating physician noted she had clear lungs and had normal neurologic exams. Claimant reported no physical limitations on her Function Report." (A.R. 12) (citing a function report plaintiff filled out discussing weight gain, diabetes, blood pressure, and high cholesterol. *See* Tr. 218). In the Court's judgment the above statement, in combination with the ALJ's statements regarding his responsibilities meets the deferential standard afforded to ALJ decisions and accordingly finds the ALJ's decision was made with substantial evidence.

### 2. The ALJ's Finding that Plaintiff Does Not Meet a Listed Impairment is Supported by Substantial Evidence.

Plaintiff next claims that the ALJ erred at step three in the evaluation by determining that plaintiff's impairments did not meet the necessary criteria of an impairment under the Listings of Impairments. (*See* Plaintiff's Brief at pp. 12-14). Plaintiff claims there was sufficient medical evidence by which the ALJ should have determined she met the necessary requirements.[4]

The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. It "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* At issue in this case are Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders).

A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or

---

[4]In this section of plaintiff's brief, plaintiff cites to a medical evaluation conducted by Dr. Sajid Hussain. (A.R. 13-14). The evaluation is used by the plaintiff to advance two arguments: First that plaintiff met the requirements for a Listing of Impairments and, second, that ALJ erred when he failed to assign Dr. Hussain's opinion controlling weight. The latter argument is one that plaintiff largely repeats and expands upon elsewhere in her brief, and accordingly is discussed later below.

is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). *See, e.g.*, *Thacker v. Social Security Administration*, 93 F. App'x. 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Listings for mental impairments generally begin with "paragraph A" criteria which is "a set of medical findings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00. Paragraph A is followed by paragraph B, which contains a "set of impairment-related functional limitations." *Id.* In two of the listings cited by the ALJ (12.04 and 12.06) the listings also contain paragraph C criteria, which are additional functional criteria. *Id.* "The requirements in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* Listings 12.04 and 12.06 are met "when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Plaintiff's brief contests the ALJ's finding that she does not meet the paragraph B requirements.

The paragraph B severity requirements of Listings 12.04 and 12.06 require at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation,[5] each of extended duration. A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(C); *see also Sullenger v. Commissioner*, 255 F. App'x. 988, 993 (6th Cir. 2007).

The ALJ found that plaintiff did not meet the paragraph B requirements of listing 12.04 and 12.06:

> In activities of daily living, claimant has mild restriction. In May 2011, claimant stated she [m]owed the lawn, washed dishes, did laundry, cooked, drove, went shopping and took care of her financial affairs (Exhibit 4E). In August 2011 claimant reported she lived with her "older mentally retarded brother" and took care of him. She stated she did all the cooking and cleaning. Ms. Katz [a licensed psychologist] stated claimant's hygiene was appropriate (Exhibit 3F). Claimant testified she is her disabled brother's caregiver [sic] and takes care of the home that they live in.
>
> In social functioning, claimant has moderate difficulties. In May 2011 claimant stated she went shopping for three hours at a time. She noted she had no problems getting along with family, friends, neighbors or others (Exhibit 4E). In June 2011 claimant reported she had a boyfriend of three years. She stated she lived with him and her disabled brother (Exhibit 8F).
>
> With regard to concentration, persistence or pace, claimant has moderate difficulties. In May 2011 claimant stated she took care of her financial affairs, drove, cooked and watched television (Exhibit 4E). In August 2011, Ms. Katz noted claimant was able to perform simple math calculations. She averred claimant was able to manager [sic] her benefit funds (Exhibit 3F).

---

[5] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

> As for episodes of decompensation, claimant has experienced no episodes of decompensation, which have been of extended duration. Claimant has had no psychiatric hospitalizations.
>
> . . .
>
> Because claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(A.R. 12-13). The record demonstrates that the ALJ's decision that plaintiff did not satisfy the Listing requirements is supported by substantial evidence. As the ALJ noted, plaintiff filled out a functional report in which she reported the abilty to complete a wide range of activities in support of her daily living, including mowing the law, preparing meals, driving, shopping, paying bills, and taking care of her older brother (A.R. 212-14). Socially, plaintiff also seemed on have only mild impairments. Plaintiff stated she had no issues getting along with family, friends and neighbors (A.R. 216). She was also able to go out shopping (A.R. 214) and have a relationship with a boyfriend for at least three years (A.R. 414). The ALJ next noted that plaintiff had only moderate difficulties regarding concentration, persistence or pace. Plaintiff was able to manage her financial affairs, drive, cook, and watch television (A.R. 212-14). The ALJ also noted the absence of hospitalizations in the record or anything else that would lead him to find episodes of decompensation which have been of extended duration.

At bottom, the the ALJ determined that plaintiff met none of the paragraph B requirements, and that determination is supported by substantial evidence. Plaintiff's brief does not show how the ALJ failed in any of the above analysis. Rather plaintiff depends upon a brief litany of plaintiff's mental impairments and treatment history as well as an evaluation by Dr. Hussain. But plaintiff fails

to show how any of impairments she complains of gives rise to the severity required for a finding that she is disabled under the Listing of Impairments, nor how treatment history and diagnoses give rise to a marked restriction in her daily living, social functioning, and concentration, persistence or pace.

Dr. Hussain's opinion contains wording that may be similar to that contained in the paragraph B severity requirements, but plaintiff does not show how the impairments in Dr. Hussain's evaluation are "medically equivalent to a listed impairment." 20 C.F.R. §404.1526(a). Additionally plaintiff fails to relate the findings in the evaluation to the requirements of paragraph B, but rather cites to the evaluation and gives a conclusory statement that the findings are severe enough to meet the paragraph B criteria. (Plaintiff's Brief, pp. 13).  This is not enough for plaintiff to meet her burden of demonstrating all of the requirements of the listing are present.  *See Hale*, 816 F.2d at 1083. Plaintiff makes no connection between the evaluation of Dr. Hussain and the specifications of the listing requirements in paragraph B. Accordingly, the plaintiff fails on this issue.

### 3. The ALJ's Decision to Give Dr. Hussain's Opinion Less than Controlling Weight is Supported by Substantial Evidence.

Plaintiff next argues that the ALJ erred when he gave Dr. Hussain's opinion less than controlling weight in determining whether plaintiff was disabled.  On August 3, 2012, Dr. Sajid Hussain completed a Mental Residual Functional Capacity Evaluation of plaintiff (A.R. 655).  As part of the evaluation, Dr. Hussain completed a worksheet that required him to check off a box next to certain abilities that corresponds with the frequency plaintiff would be impaired in that ability in light of plaintiff's mental issues. Dr. Hussain checked boxes under the heading "marked loss"[6] for

---

[6]The worksheet described "marked loss" as the "ability to function in this area is seriously limited and your patient cannot satisfactorily perform this activity independently, appropriately,

the following: (1) the ability to carry out detailed instructions; (2) the ability to sustain an ordinary routine without special supervision; and (3) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Under the heading "Extreme Loss,"[7] Dr. Hussain checked a box under the heading "the ability to accept instructions and respond appropriately to criticism from supervisors." (A.R. 658). Plaintiff argues that the opinion should have been given controlling weight in the ALJ's analysis.[8]

The ALJ stated that "[I]n August 2012, Dr. Hussain opined claimant had extreme limitations in her ability to accept instructions and criticism, and had marked limitations in her ability to get along with her supervisors and coworkers (Exhibit 19F). However, claimant has a very good work history and is her brother's representative payee. Therefore, I give Dr. Hussain's opinion little weight." (A.R. 12).

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not

---

effectively and on a sustained basis in a regular work setting for one-third (2 hours) of an eight hour work day" (*See* A.R. 657).

[7]"Extreme loss" is described as meaning the "patient cannot perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting" (A.R. 657). The worksheet also contained boxes for less severe frequencies, which Dr. Hussain checked, but which are not relevant here.

[8]The Court has already determined, *supra*, that plaintiff did not demonstrate she met the severity requirements of paragraph B. This section deals solely with the weight assigned to the doctor's opinion by the ALJ.

inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

15

The Court concludes the ALJ did not err in giving Dr. Hussain's assessment little weight. Because Dr. Hussain qualifies as a treating physician[9] the ALJ must "give good reasons" for giving his opinion less than controlling weight." *Gayheart*, 710 F.3d at 376. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

In analyzing the opinion of Dr. Hussain, the ALJ gave two reasons for discounting the weight of the opinion: (1) the plaintiff's work history; and (2) the plaintiff's responsibility and care for her mentally handicapped brother. These reasons are supported by substantial evidence. Plaintiff reported she got along "OK" with authority figures, such as a boss, and was never fired from a job because of issues with coworkers (A.R. 217). She was also able to relate with others and cope sufficiently to be the guardian of her handicapped brother. (A.R. 212). As the ALJ noted, Dr. Hussain's assessment is inconsistent with the plaintiff's work history and lack of discharge from

---

[9]Dr. Hussain formed a treating relationship with plaintiff beginning no earlier than November 17, 2010. This was when plaintiff began treatment at Summit Pointe. Her actual therapist at Summit Pointe was Lucinda Hansen. It appears Dr. Hussain had responsibility for medication checks. His first evaluation of plaintiff was on February 28, 2012 (A.R. 635). He completed the subject evaluation on August 3, 2012 (A.R. 668). He may technically qualify as a treating physician, but his contacts with plaintiff were limited and focused on medication issues.

employment, as well as plaintiff's frequent and extensive interaction with her brother. To the extent that plaintiff does have limitations in this area, they are adequately accounted for in the ALJ's RFC determination that plaintiff can perform simple, routine tasks with occasional interaction with the public and occasional supervision. (A.R. 13). Accordingly, the Court finds that the ALJ did not commit reversible error with regard to the weight he gave Dr. Hussain's opinion.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate order shall issue.


Dated:     September 18, 2015             /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE